IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VENISCIA HUMPHREY, Individually and as Parent and Next Friend of TENISCIA HUMPHREY-LEE, a Minor, | ) ) ) |
| Plaintiff, | ) ) ) Civil Action No. 10-3327 |
| v. | ) ) |
| THE UNITED STATES OF AMERICA, ADVOCATE SOUTH SUBURBAN HOSPITAL, ADVOCATE HEALTH CARE NETWORK and ADVOCATE HEALTH AND HOSPITALS CORPORATION, | ) Hon. Manish Shah ) ) ) Mag. Judge Daniel Martin ) ) |
| Defendants. | ) |

**<u>PLAINTIFF'S, TERRENCE LEE'S, MEMORANDUM IN SUPPORT OF HIS MOTION FOR ATTORNEY'S FEES AND COSTS PURSUANT TO RULE 54 FEDERAL RULES OF CIVIL PROCEDURE</u>**

*INTRODUCTION*

This is a Federal Tort Claims Act case arising from obstetrician Dr. Melvin Merritt's failure to perform an emergency cesarean section delivery of Teniscia Lee ("Teniscia"), a minor, when her mother, Veniscia Humphrey, was in labor experiencing an acute placental abruption. With Ms. Humphrey in severe distress, Dr. Merritt waited forty minutes to deliver Teniscia by cesarean section exposing Teniscia to severe hypoxia. As a result, Teniscia Lee experienced a catastrophic brain injury with little or no chance of reversal or full recovery.

After a total of four years of litigation (two and a half of which counsel for Plaintiff, Terrence Lee was involved), counsel for Father, Terrence Lee, and Mother, Veniscia Humphrey, achieved an extraordinary

1

settlement, as the relief negotiated remedies the claims in this lawsuit. Teniscia Lee will benefit from a settlement of $13 million dollars. This represents a remarkable result in a case with vigorously contested liability. Such relief will provide Teniscia a quality of life that will provide her overwhelming comfort in a manner that she would not have otherwise experienced. For achieving this result, attorney's fees in the amount of 25% of the gross amount of the settlement, $3.25 million, should be awarded to Father's attorney and Mother's attorney.

**FACTUAL BACKGROUND**

The case was commenced in Federal Court on June 1, 2010, with the filing of a Complaint on behalf of the minor child, Teniscia Lee, by her Mother, Veniscia Humphrey ("Veniscia") against the United States of America, Advocate South Suburban Hospital, Advocate Health Care Network and Advocate Health and Hospitals Corporation. Father, Terrence Lee ("Terrence"), was never served with notice of this litigation.

During the period of time of the filing of the 2010 Complaint by Veniscia Humphrey, Terrence and Veniscia were litigating child support and custody issues in the Domestic Relations Division of the Circuit Courts of Cook County. Terrence Lee was represented by Attorney Arlette G. Porter during those proceedings. Mark McKenna of the Hurley McKenna & Mertz firm ("Hurley"), the firm representing Veniscia in the separate Federal tort case, appeared during these custody proceedings, but did not file an appearance nor did he indicate that he was there to represent Veniscia in the custody matter. On May 19, 2011, Judge Sharon Johnson, Judge in the Circuit Court of Cook County, Domestic Relations Division, held a hearing on custody of the minor child, Teniscia. It was during the course of the custody proceedings, the Court and Terrence were made aware that there may be a separate personal injury matter filed on behalf of the minor child. No particulars were given as to whether an actual case had been filed or not. However, on May 19, 2011, Judge Johnson granted joint custody of the minor child, Teniscia,

to Terrence and Veniscia. The Court ordered Veniscia to keep Terrence apprised of any personal injury proceeding filed on behalf of the minor child.

On or about December 2, 2011, Hurley, on behalf of Veniscia, filed a Petition for Guardianship of the Estate of Teniscia Lee. Hurley again never effected service upon Terrence. Through a cursory check of Probate records, Terrence discovered that Veniscia had filed the guardianship petition. On December 14, 2011, Terrence filed his Counter-Petition and on January 17, 2012, Judge Kathleen McGury of the Probate Division of the Circuit Court of Cook County, appointed Terrence and Veniscia as Co-Guardians of the Estate of Teniscia. Judge McGury **ALSO** ordered that Veniscia keep Terrence informed of all proceedings of a personal injury matter filed on behalf of Teniscia.

On December 10, 2011, Terrence and counsel entered into a contingency fee agreement. (Exhibit A). At that time, Terrence and counsel began discussions on filing a personal injury negligence action on behalf of Teniscia. He and counsel contacted well-known personal injury firms with respect to filing a negligence action on behalf of Teniscia. However, once Terrence and counsel became aware of the 2010 action filed by Hurley on behalf of Veniscia, Terrence chose to ratify the 2010 action. On January 26, 2012, Terrence filed his appearance in the instant action, individually and as Co-Guardian, Parent and Next Friend of Teniscia. At the time that Terrence filed his appearance, the instant action had been in progress for at least two years. However, at all times since the filing of his appearance, Terrence has participated in all proceedings, negotiations, conferences, telephone calls, having reviewed doctors' and experts' reports, conducted extensive research, attended depositions and written letters to opposing

3

counsel and Hurley. Hurley and counsel at various times discussed the status of the case, the strategy of the case, whether settlement was a viable option for the parties, the results of inability to reach a settlement, the nature, scope and direction of the case, and future prosecution of the case. After the filing of his appearance in 2012, at the request of Terrence's counsel, we were provided copies of Veniscia's medical records, A Day In The Life [of Teniscia] video, and copies of deposition transcripts that had been taken prior to our entry in the case. Counsel reviewed thousands of pages of documents and participated in all subsequent depositions other than two. We actively researched case law on cases such as the instant action and engaged in numerous conversations with Hurley regarding the scope of the case.

**THE SETTLEMENT AGREEMENT RELEVANT TO APPROVAL OF THE FEE REQUEST**

The terms of the Settlement Agreement were reached after Terrence became involved in the case and only after negotiations of counsels. It was made after consultation with experts in this area of practice and evaluation of the evidence. The parties were fully aware of the issues and risks associated with their claims and defenses. The Settlement Agreement is the result of earnest, knowledgeable, arms-length and in fact often difficult negotiations. At the time that Terrence became involved in the case, expert witnesses and third-party witnesses had been identified by Hurley – witnesses to wit Terrence agreed to and found it unnecessary to supplement with additional witnesses. Until recently, no substantive motions were filed by Hurley or Terrence's counsel.

Terrence and counsel fully participated in the settlement conference and went on the record as full participants in the negotiations. At all times that attorneys were meeting, I fully participated in discussions and my opinion was sought as was the opinion of all other attorneys

4

participating in the settlement conference. During these negotiations while Magistrate Judge was conveying Terrence's and Veniscia's positions regarding settlement to opposing counsel, Mark McKenna motioned for Chris Hurley to follow him. Inasmuch as they were counsel from the same firm, their disappearance caused no alarm. It was only after they reappeared some 45 minutes later that counsel learned that they had gone to Magistrate Judge's chambers and held an *ex parte* conference regarding settlement. When this was made known to counsel, McKenna was informed that no other conversations should take place without my knowledge and participation. From thence forth, again counsel was involved in all settlement talks, opinions, negotiations, crunching of numbers and approval of amounts.

I thoroughly reviewed all the settlement documents. At their request, our requested changes were sent to Hurley who indicated that he would submit a joint request to opposing counsel. Hurley and I discussed at length the two settlement documents. As a matter of fact, Hurley was in agreement with almost all of the changes we requested. Hurley further informed me that they would send the requests to opposing counsel. We now question whether those requests were ever submitted to counsel for the USA. Nonetheless, the settlement documents were executed by Terrence in the same capacity and standing of Veniscia. The settlement documents were also executed by Hurley and me in the same capacity and as counsel for our respective parties.

## THE ATTORNEY'S FEES REQUESTED ARE FAIR AND REASONABLE AND SHOULD BE APPROVED

Terrence's counsel took this case on a contingency basis, involving a risk of attorney time, plus expenses. (Exhibit A) Veniscia's attorneys took this case on a contingency basis also. Thus, Teniscia has reaped the benefit of experienced and skilled counsel. The relief achieved in this case is substantial, providing Teniscia with substantial funds to live comfortably in her future years. In short, the award of the requested fees and expenses merit approval.

## AGREED TO FEE PROVISIONS ARE FAVORED BY THE COURT IN CASES OF THIS TYPE

In *Hensley v. Eckerhart*, 461 U.S. at 424, 437 (1983), the U.S. Supreme Court held that negotiated, agreed-upon attorney's fee provisions, such as that provided for in the instant settlement are the "ideal" toward which the parties should strive. "A request for attorney's fees should not result in a second major litigation." The settlement agreement between the parties herein includes a provision for payment of attorney's fees and expenses, subject to a court's approval. Unlike common fund cases where attorney's fees can erase a considerable portion of the funds allocated for settlement, the attorney's fees negotiated herein are separately designated and after the settlement amount, thus removing the danger that the attorney's fees would unfairly swallow the proceeds that should go to Teniscia. Thus, the award of 25% of the gross amount of settlement as attorney's fees is not a trade off for a lesser result for Teniscia. The Court merely needs to approve the overall package as a whole as reasonable. This Court should subsequently approve the attorney's fee provision as part of the process of approving the fully integrated settlement agreement and provide the parties' agreement great deference.

**ATTORNEYS' FEES THAT HAVE BEEN AGREED TO BETWEEN THE PARTIES ARE BASED ON MARKET FORCES AND ARE THEREFORE REASONABLE**

It is not necessary that a fee award in contingent, representative litigation must be built up from the number of hours spent by the lawyers on the case. For example, in *In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992), where the Seventh Circuit reversed the district court's "lodestar" (hours spent times hourly rate) award, Judge Posner dissected both the time-based approach and the judicial attempt to set a value on plaintiffs' lawyers services stating:

> It is apparent what the district judge's mistake was. He thought he knew the value of the class lawyers' legal services better than the market did..He may have been right in some ethical or philosophical sense of "value" but it is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order.

*Id*. at 568.

As Judge Posner observed, it is inappropriate to "determine the value of a service that the market has set its own value on" by reference to hours or hourly rates, and it is error not to award a substantial premium "in order to reflect the risky character" of litigation. *Id*. at 569. Here, the fee was negotiated under market conditions. Terrence entered into a contingency fee agreement with counsel on behalf of his daughter, the Plaintiff in this case in the same manner as did Veniscia, the mother in this matter. The result was an arm's-length, negotiated, reasonable fee that was set by the market and should be approved.

**THE RISKS OF THE LITIGATION AND THE CONTINGENT NATURE OF THE FEE**

"It is axiomatic that risk demands a premium. And, as a general rule, the greater the uncertainty of payment, the greater the premium should be." *In re Superior Beverage/Glass*

7

*Container Consol. Pretrial*, 133 F.R.D. 119, 127 (N.D. Ill. 1990). Terrence's counsel ran the risk of nonpayment in this case, as did Hurley, and those risks must be compensated in the same and like manner for all counsel. In this case, absent this Settlement, counsels faced numerous factual and legal hurdles that they would have to clear in order to secure a meaningful recovery for Teniscia. While this case did not get close to even going to trial, counsels may have had to defend motions to dismiss, motions for summary judgment, and ultimate victory was not certain. The complex issues of this case could likely have resulted in a battle of the experts. Even if all of these hurdles were overcome, there was also the possibility of appeal. Obviously, an appeal would result in a further delay, substantial expense and create uncertainty. As was held in *In re Warner Communications Sec. Litig.*, 618 F.Supp. 735 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986), "an appeal could seriously and adversely affect the scope of an ultimate recovery, of not the recovery itself." In view of the difficulties and complexities of the case, Terrence and Veniscia would bear the risk of losing at trial, having the case dismissed prior to trial or having a diminished recovery following victory and appeals. Thus, there is a genuine risk of no recovery.

Additionally, Terrence's counsel has received no compensation during the course of this litigation despite having made a significant time commitment and incurred expenses to bring this action to a successful conclusion for the benefit of Teniscia. The enormous amount of time devoted to litigation of this matter would make it impractical for Terrence to pay counsel on an hourly basis to pursue the claims. "Because they shift part of the risk of loss from the client to the lawyer, contingent fee contracts usually yield a larger fee in a successful case than an hourly fee would." *Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998). Thus, Terrence's counsel

litigated this matter with no guarantee that counsel would receive any compensation for her effort on behalf of Terrence and Teniscia. Terrence, as Parent, Co-Guardian and Joint Custodian had the capacity and standing to enter into a contingency fee arrangement on behalf of his daughter with counsel of his choice as did Veniscia. The contingent fee arrangement commences with the execution of the engagement letter. Terrence executed an Engagement Letter with counsel (Exhibit A). Veniscia executed an Engagement Letter with Hurley. Both Engagement Letters are contingency fee arrangements and on equal footing. Neither engagement letter contains a payment based on an hourly fee arrangement, amount of work done arrangement, number of personal injury matters litigated arrangement or any other nebulous term. For all the foregoing reasons, Terrence's counsel's fee request is reasonable.

**THE RESULT ACHIEVED**

Courts consistently recognize that the result achieved is a major factor to consider in making a fee award. The Court in *In re King Resources Co. Sec. Litig.*, 420 F.Supp. 610, 630 (D.Colo. 1976) stated "while other factors are of substantial importance in determining the reasonable attorneys' fees, the amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client. 420 F.Supp. at 630. Terrence's counsel was confronted with complex factual and legal issues that presented significant hurdles to achieving a settlement of the magnitude obtained herein. Accordingly, it was a considerable achievement that the undersigned was able to participate and obtain the significant Settlement achieved herein. This Settlement provides fair and reasonable relief. Such relief will provide Teniscia with a comfortable future and significantly improved quality of life. Thus, the relief obtained by Terrence's counsel supports the fee request.

**THE SKILL AND EFFICIENCY OF COUNSEL**

In this case, Terrence was represented by counsel who is skilled and proficient in the art of negotiation and handling complex situations. Terrence's counsel was also knowledgeable enough to know that she would have to engage members of the trial bar to take the instant action to trial. However, the engagement of further counsel was not necessary inasmuch as counsel was more than able to fully participate in the proceedings had during the two and a half years. Counsel is more than competent in brief writing, presenting oral argument and presentation. Counsel was more than diligent in these proceedings and during the settlement negotiations of which this Court has taken note. The Court should also take note that the Hurley firm is a firm of great skill in these matters, as are counsel for the defendants. The ability of counsels working conjunctively with their respective clients to recover a settlement of the type achieved here in the face of such formidable legal opposition provides further evidence of the quality of her work which favors approval of the requested fee award.

**THE COURT SHOULD ALSO AWARD REASONABLE COSTS**

Counsel has incurred expenses including, *inter alia*, the costs of photocopying voluminous amount of documents, and necessary travel to depose geographically-dispersed experts and witnesses. These expenses were reasonable and necessary to obtain the extraordinary result achieved herein. Terrence was aware that counsel would seek reimbursement of these expenses incurred in the prosecution of this action.

**CONCLUSION**

For the foregoing reasons, Terrence Lee's counsel, ARLETTE G. PORTER, respectfully requests that the Court grant her fee application and award her one half the attorney's fee award in this action or $1.625 million in fees and her costs incurred herein.

        Respectfully submitted,

        /s/ Arlette G. Porter
        ARLETTE G. PORTER
        Law Office of Arlette G. Porter
        11346 S. Prairie Avenue
        Chicago, Illinois 60628
        773-218-8050
        773-928-8237 (fax)
        ATTORNEY FOR PLAINTIFFS
        TERRENCE LEE and TENISCIA LEE