IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **VENISCIA HUMPHREY, individually and as parent and next friend of TENISCIA HUMPHREY-LEE** | ) ) ) ) | |
| **Plaintiff,** | ) ) | Case No: 10 C 3327 |
| v. | ) ) | Magistrate Judge Daniel G. Martin |
| **THE UNITED STATES OF AMERICA,** *et al.*, | ) ) ) ) | |
| **Defendants.** | ) | |

## ORDER

The attorney's fees and costs portion of Plaintiff's Emergency Petition to Approve and Compel Consummation of Settlement and Attorneys Fees [68] is granted. Non-Party Terrence Lee's Motion for Award of Attorney's Fees and Costs [139] is denied. The law firm of Hurley McKenna & Mertz shall recover the full 25% contingency fee, and Arlette G. Porter shall recover no fee and no expenses. Hurley McKenna & Mertz P.C. shall be repaid its expenses in the amount of $63,768.95, which it incurred in litigating this matter on behalf of the minor plaintiff. The Court also approves payment of $200,000 to the Illinois Department of Healthcare and Family Services to fully satisfy its lien.

## STATEMENT

This case arose from Dr. Melvin Meritt's failure to perform an emergency cesarean section delivery of Teniscia Humphrey-Lee when her mother Veniscia Humphrey (Humphrey) was in labor experiencing an acute placental abruption on July 11, 2008. On August 22, 2008, Humphrey met with attorneys Christopher Hurley and Mark McKenna at the law office of Hurley McKenna & Mertz (HMM). On that date, Humphrey hired HMM to represent her on a contingency fee basis to represent her and her minor daughter "in the settlement, adjustment or prosecution of a claim for damages arising out of the following: an action or occurrence at or near South Suburban Hospital on or about July 11, 2008 against persons responsible." (Doc. 105-1). This medical malpractice action was filed on June 1, 2010 by Humphrey against the United States under the Federal Tort Claims Ac (FTCA), on behalf of her minor daughter. After completing fact and expert discovery, the parties engaged in a settlement conference with the undersigned magistrate judge on January 23, 2014. Terrence Lee (Lee), the minor daughter's biological father, and his attorney were allowed to attend the settlement conference by agreement of the parties. At the settlement conference, the parties reached an agreement to settle the case for $13 million. Neither Lee nor his attorney objected to the terms of the settlement. On October 2, 2014, the parties stipulated to dismissal with prejudice, pursuant to the settlement agreement.

On December 10, 2011, Lee agreed to retain Arlette G. Porter, Esq. (Porter) to represent him and his daughter "in our claim against any individual, company or entity for injuries, personal or otherwise, sustained by Teniscia before, during and after her birth." (Doc. 140, Exh. A). The agreement between Lee and Porter claims that Porter "will receive as her fee thirty-three and one-third percent (33-1/3%) of the gross amount received by way of settlement. In the event that a lawsuit is filed, or my case is submitted to binding arbitration, my Attorney shall receive as her fee forty percent (40%) of the gross amount received by way of arbitration." Id. Lee is not and has not ever been a named plaintiff in this case. "An attorney for Lee filed an appearance on the docket in January 2012, labeling Lee as a 'Co-Plaintiff,' [29], but no judge authorized Lee to file documents as a party in the action." (Doc. 180 at 1).

Humphrey and Lee now dispute the division of the twenty-five percent contingency fee ($3,250,000) being held in HMM's client trust account. Under the FTCA, no attorney shall be paid a fee that exceeds 25 percent of the judgment or settlement. 28 U.S.C. § 2678. In this action, the Stipulation for Compromise provides that "[t]he parties agree that any attorneys' fees owed by the Plaintiffs in this action against the United States under the Federal Tort Claims Act shall not exceed twenty-five percent (25%) of the Settlement Amount as provided in 28 U.S.C. § 2678." (Doc. 78-1 at 4). The Stipulation for Compromise defines "Plaintiffs" to include individuals releasing claims "whether or not a party to this civil action." Id. at 1.

Humphrey seeks an order finding that the contingency fee in this action of twenty-five percent of the gross settlement amount is fair and reasonable and shall be paid solely to her attorneys pursuant to the contingency fee agreement she entered into with HMM and as limited by the FTCA. (Doc. 68 at 7). She contends that HMM "performed all of the work which led to the defendant's $13,000,000 settlement offer." (Doc. 113 at 5). Humphrey asserts that counsel for Lee, Arlette Porter, took no active role litigating this case and in procuring the settlement, and should be awarded no fee out of the gross settlement proceeds. Lee, on the other hand, moves for an order awarding his counsel one-half of the attorney's fee of 25% of the gross settlement amount (or $1.625 million) based upon his contingency fee agreement with Porter. (Doc. 139). Despite Porter performing no substantive role in the case, Lee asserts that Porter is entitled to one-half of the continency fee because he is co-guardian and joint custodian of the minor plaintiff and he chose to "ratify" this action filed by the mother. (Docs. 139 at 3, 149 at 3).

The Court agrees with Humphrey. Porter is not entitled to a contingency fee. First, the division of fees Lee proposes violates applicable ethical rules. Under Northern District of Illinois Local Rule 83.50, the applicable disciplinary rules are the Model Rules of Professional Conduct adopted by the American Bar Association. ABA Model Rule 1.5(e) addresses fee divisions between lawyers who are not in the same firm. Rule 1.5(e) of the Illinois Rules of Professional Conduct is largely the same as ABA Model Rule 1.5(e). Model Rule 1.5(e) allows lawyers who are not in the same law firm to share fees under certain circumstances and states:

> (e) A division of a fee between lawyers who are not in the same firm may be made only if:
>
> (1) the division is in proportion to the services performed by each lawyer or each lawyers assumes joint responsibility for the representation;
>
> (2) the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing; and

-2-

      (3) the total fee is reasonable.

Lee's claim to one-half of the contingency fee in this action is subject to the requirements of Rule 1.5(e). Here, the first two requirements were not met. Rule 1.5(e) clearly indicates that all divisions of fees between attorneys who are not in the same firm must be, among other things, in writing and approved by the client. The attorneys' clients–Humphrey and Lee–never agreed to a fee-sharing arrangement regarding this case. In fact, Humphrey "expressly does not consent to a portion of the attorney's fee being paid to Arlette Porter." (Doc. 105 at ¶¶ 11, 12). Thus, Lee's suggestion of a division of fees between HMM and Porter which the clients did not agree in writing to violates Rule 1.5(e). An attorney may not recover a fee pursuant to an arrangement that violates Rule 1.5(e). Kaplan v. Pavalon & Gifford, 12 F.3d 87 (7th Cir. 1993) (holding that in Illinois, a fee-sharing arrangement between attorneys that is not in writing and not signed by the client is unenforceable as a matter of public policy); LR 83.50 (stating that "[o]n any matter . . . for which the ABA Model Rules are inconsistent with the Rules of Professional Conduct, a lawyer admitted to practice in Illinois is governed by the Illinois Rules of Professional Conduct, as adopted by the Illinois Supreme Court.").

      Lee has also failed to show that the one-half division he proposes is in proportion to the services performed by each lawyer or that Porter assumed joint responsibility for the prosecution of this action. All the substantive work necessary to get this case ready for trial was performed by HMM, and the settlement agreement was solely the result of the efforts of HMM. In order to achieve the outstanding result in this case, HMM was required to order and pay for all medical records regarding potential liability and damages, consult with an expert obstetrician and obtain a certificate of merit as required under Illinois law, draft and file a complaint in state court, draft and file with the United States Department of Health and Human Services an administrative claim, draft and file a complaint in federal court after the FTCA six month waiting period, draft and file Rule 26(a)(1)(B) disclosures identifying over 40 witnesses, issue and answer all written discovery requests, depose 19 liability, causation, and damages witnesses, produce a "Day in the Life" video of the minor plaintiff in order to document the child's injuries, retain and consult with six expert witnesses, draft five expert reports, prepare and produce five experts for depositions, depose the Defendant USA's five expert witnesses, draft Plaintiff's settlement demand, draft the Settlement Conference Submission on behalf of the minor plaintiff, attend the settlement conference and negotiate the settlement, and have present at the settlement conference an expert in annuities and structured settlements. (Doc. 104 at 2-6, ¶¶ 3-20); see also (Doc. 103 at 5-6, ¶4).

      In sharp contrast to the time, skill, risk and responsibility expended by HMM in obtaining the significant settlement is Porter's complete lack of involvement in this litigation until its very end. Porter is a divorce and family law attorney. Porter has performed services for Lee not related to the instant federal case, such as providing representation in the Cook County Circuit Court custody and child support proceedings, for which it assumes she has been compensated. Porter has produced no evidence which shows that she has any experience handling complex medical malpractice litigation or that she would have been qualified to provide any substantive assistance with this case.

      Porter performed no substantive work on this case before settlement was reached. Porter has produced no evidence of a substantive pleading, discovery response, or correspondence drafted by her in this matter. There is a dispute as to the number of depositions Porter attended in this matter, but there is absolutely no evidence that Porter played an active role in the taking or

defending of any deposition. (Docs. 103 at ¶¶ 5, 8; 104 at ¶ 23; 109 at ¶ 7). Since this case was assigned to the undersigned magistrate judge on October 1, 2012 (doc. 38), Porter appeared at certain status hearings but did not take a substantive role in any court appearance. Porter attended but played no substantive role in the January 23, 2014 mediation facilitated by the undersigned magistrate judge.

The Court finds no merit in Lee's argument that HMM was obligated to join Lee as a required party. (Doc. 109 at 4-6). As to this action, Humphrey was ordered only to keep Lee and his counsel "informed of all proceedings." (Doc. 97-1 at 1, 7). Lee and his attorney have known about this lawsuit since at least January 2012. (Doc. 29). If Lee desired an active role in the litigation of the case, he should have sought to intervene long ago. Instead, Lee did not move to intervene in this suit until October 14, 2014, after the settlement had been approved by the court and the stipulation to dismiss had been filed. (Doc. 173).

Moreover, Lee has presented no evidence that Humphrey or her attorneys did not adequately represent his minor daughter's interest in the lawsuit and settlement negotiations. Lee and Porter approved the settlement with no objection. HMM has extensive personal injury and medical practice litigation experience, including trying numerous birth injury cases to verdict and settling many more birth injury cases. (Doc. 103 at 1, ¶ 1); see also (Docs. 103-1, 104 at 1, 10-11). HMM has recently received verdicts for children that suffered brain damage at birth in the amounts of $9,000,000 and $14,000,000. Id. The time and labor involved in this case and the results obtained by HMM were extraordinary. HMM spent over 5½ years on this matter. Id. at 3, ¶ 3(i). Based on its search of the Cook County Jury Verdict Reporter, HMM represents that the $13,000,000 settlement in this case is the highest pre-trial settlement ever paid by the United States. Id. at 4, ¶ 3(iv).

In her affidavit, Porter admits that HMM was fully capable and qualified to handle this case and that her services were not needed or requested:

> There is no need, and was no need, for the parties to have filed separate actions making the same claims on behalf of Teniscia, deposing the same parties, providing the same documents, requesting the same medical records, duplicating the same efforts. There is no need to re-invent the wheel.
>
> * * *
>
> Mr. Lee and I felt it totally unnecessary and not a productive use of time and resources for us to duplicate the two year efforts that had already been commenced by the Hurley firm. The acceptance and ratification of efforts already in place were more prudent in our opinion and much more cost effective. Moreover, there is not need to ask the same questions during a deposition that has previously been asked, especially when participating in a five hour video deposition of an expert witness from England, among other. However, I submit that asking a duplicative question and receiving the same answer is NOT a good indicator as to whether an attorney is participating in a deposition. I stood ready at all times to prepare any documents necessary in this matter. However, every attempt to assist with document preparation in this matter with Mark McKenna resulted in him saying that he would take the lead and prepare the documents.

(Doc. 109 at 3-4, 9). Porter's affidavit makes no mention of any substantive work she performed in this case which benefitted the disabled child. Standing "ready at all times" to prepare documents and assist in the matter and "ratification" of efforts by another law firm is not a valid legal basis for recovering attorney's fees. (Doc. 109 at 9). Because Porter performed no services of value to the minor plaintiff, the allocation of any of the settlement proceeds towards her fees would not be proportional.

Second, the Engagement Letter between Lee and Porter violates the ethical standards governing fees because it would result in an unreasonable fee and unfair windfall for Porter. All fees for legal services must be reasonable. Model Rule of Professional Conduct 1.5(a) prohibits excessive fees, stating "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee." Illinois Rule of Professional Conduct 1.5(a) is the same. Because this suit was on behalf of a minor, this Court is further authorized to assess the reasonableness of Lee's requested fees pursuant to Local Rule 17.1. See LR 17.1 (stating "[a]ny proposed settlement of an action brought by or on behalf of an infant or incompetent shall not become final without written approval by the court . . . . The court may authorize payment of reasonable attorney's fees and expenses from the amount realized in such an action."). Contrary to Porter's assertions, simply because Lee agreed to a contingent fee agreement does not mean that court approval is automatically warranted. Johnson v. Sioux City & New Orleans Barge Lines, Inc., 629 F.2d 1244, 1248 n. 6 (7th Cir. 1980) (stating "[a]lthough an attorney may contract with a client for a contingent fee, . . . his right to do so is not unrestrained. The right to contract is limited to a 'reasonable' contingent fee.").

Porter's claim to one-half of the contingency fee in this case is unreasonable and excessive. Indeed, Porter's claim to *any* portion of the contingency fee in this case is unreasonable and excessive. The Court believes that an attorney's attempt to collect any fees in an action where she did not represent a named plaintiff, she performed no substantive work on the case, and her services were of no benefit to the minor plaintiff and did not result in the successful settlement appears unreasonable on its face. Johnson, 629 F.2d at 1248 n. 6 (explaining that "one of the underlying assumptions of a fair and reasonable contingent fee contract" is "that an attorney provide legal services in exchange for a fee based on fixed proportion of the benefit inuring to his client.").

In addition, applying the factors relevant to determining the reasonableness of fees outlined in Model Rule 1.5(a), enforcement of the Engagement Letter between Lee and Porter as written would be unreasonable. The relevant factors are: (1) time and labor required, novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. Model Rule 1.5(a)(1)-(8).

This birth injury case was time-consuming, complex, and strongly defended by the United States. Proving deviation from the standard of care and causation was more difficult in this case than the average medical negligence case:.

In this case, the obstetrician and the hospital staff found no fetal heart tones when

>the mother arrived at the hospital, and Dr. Merritt concluded that the baby was stillborn. The USA found a very well-qualified obstetrical expert who supported Dr. Meritt's decision not to perform an emergency cesarean section to deliver a likely deceased fetus. Further, the USA had a strong defense on causation, since the mother clearly had experienced a significant placental abruption at least an hour before she arrived at the hospital, and abruption is a well-known cause of hypoxia. The USA disclosed several experts who were able to credibly testify that Teniscia's brain damage became sever[e] and permanent due to hypoxia which occurred before her mother even arrived at the hospital.

(Doc. 106 at 3, ¶ 13). Porter is a divorce and family law attorney. Porter has not demonstrated that she has any experience in personal injury or medical malpractice matters, let alone experience litigating a complex birth injury case.

HMM disputes the amount of time spent by Porter on this action. (Docs. 103 at ¶¶ 5, 8; 104 at ¶¶ 21-23). Porter states that since January 2012, she "has participated in all proceedings, negotiations, conferences, telephone calls, having reviewed doctors' and experts' reports, conducted extensive research, attended depositions and written letters to opposing counsel and Hurly." (Doc. 139 at 3-4). Porter claims that she "reviewed thousands of pages of documents and participated in all subsequent deposition other than two. We actively researched case law on cases such as the instant action and engaged in numerous conversations with Hurley regarding the scope of the case." Id. at 4; see also Doc. 142 at ¶ 4. Porter did not submit any records detailing the time and labor she expended on this case. Even if Porter had presented detailed evidence supporting her claim as to how much work she performed, she would not be entitled to any fee from the contingency amount. It is not enough to show the amount of work performed in a case. Rather, to determine whether the time spent on those matters is a reasonable amount, Porter must show that the time spent was necessary and benefitted the minor plaintiff's case. Porter has made no showing that any of the time she claims to have spent on this case was necessary or conferred any benefit to the minor plaintiff. The minor plaintiff received a significant settlement as a sole and direct result of HMM's efforts, and Porter has provided no evidence refuting that HMM performed extraordinary services. On this record and given its knowledge of this case, the Court determines that the time allegedly spent by Porter was unnecessary and did not benefit the minor daughter's case.

Porter also presented no evidence that working on this case required her to turn away any other business. Finally, it is not usual or customary for an attorney who did not represent a named plaintiff, who was not a referring attorney, who had no experience representing plaintiffs in personal injury matters, who never handled a birth injury medical malpractice case, and who performed no substantive work in the case to collect any fee in a birth injury medical negligence case. (Doc. 106 at 4, ¶ 18). For these reasons, the contingency fee agreement between Lee and Porter is unreasonable and unenforceable.

In the absence of an enforceable contingency fee agreement and fee sharing arrangement, the only way Porter could recover any amount of the contingency fee is under an extra-contractual theory. Porter relies solely upon the Engagement Letter and expressly disclaims relief under the *quantum meruit* theory or any other equitable theory. (Doc. 149 at 8, 10) (Porter stating that "the theory of *quantum meruit* is inapplicable in this matter inasmuch as I have not been discharged by Mr. Lee, which is a necessary requirement of said theory.").

      HMM's request for an attorney's fee of 25% of the gross settlement is reasonable and fair given its extensive investigation, litigation, and excellent settlement in this matter. The customary fee for this type of litigation in Illinois is one-third of the recovery. (Doc. 103 at 4, ¶ 3(iii)). Because this is an FTCA case, the fee is limited by law to 25% of the recovery, which is the customary fee in an FTCA case. (Docs. 103 at 4, ¶ 3(iii); 106 at 4, ¶ 16; 113 at 6-7). The full 25% contingency fee appropriately compensates HMM for accepting the significant risks and responsibilities of prosecuting this complicated birth injury case and the outstanding results obtained. Thus, this Court finds that the contingency fee of twenty-five percent (25%) of the gross settlement amount, as limited by the FTCA, is fair and reasonable and shall be paid in full to Hurley McKenna & Mertz to compensate the firm for the services performed and risks taken in obtaining the settlement amount.

      Lastly, HMM seeks to recover expenses in the amount of $63,768.95 associated with this litigation. (Doc. 68-3). These costs are fair and reasonable and were necessary to litigate this matter on behalf of the minor plaintiff. HMM shall be paid these expenses as provided in the settlement documents. Porter has requested reimbursement of $387.39 in expenses. Because Porter has not demonstrated that the minor plaintiff received any benefit from the payment of any of those expenses, her request for expenses is denied.

**Dated: November 7, 2014**　　　　　　/s/ *Daniel M. Martin*